Alfredo DIAZ, Plaintiff–Appellant,

v.

FORT WAYNE FOUNDRY CORPO-
RATION, Defendant–Appellee.

No. 97–2003.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1997.

Decided Dec. 19, 1997.

Christopher C. Myers (argued), Samuel L. Bolinger, Myers & Geisleman, Fort Wayne, IN, for Plaintiff–Appellant.

Anthony Stites (argued), J. Michael O'Hara, Barrett & McNagny, Fort Wayne, IN, for Defendant–Appellee.

Before EASTERBROOK, MANION and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Alfredo Diaz took a month's leave from his job under the Family and Medical Leave Act of 1993 when his physician certified that he had bronchitis. Fort Wayne Foundry, the employer, told Diaz to return to work on April 30, 1995. Diaz did not come back but called on May 1 to inform the Foundry that he was receiving medical treatment in Mexico, and that the Foundry would hear from his new physician by May 5. On May 8 the Foundry received a note from a Dr. Llamas asserting that Diaz suffered from irritable bowel syndrome, hiatal hernia, gastroesophageal reflux, and a duodenal peptic ulcer, requiring a month and a half of rest. These conditions are unrelated to bronchitis, raising suspicions at the Foundry. But instead of invoking its option under 29 U.S.C. § 2613(c) to require a second opinion, the firm sent Diaz a letter postponing his return until May 18 (52 days from the start of his leave).

Diaz did not return to work after May 18 or explain his absence. On May 30 the Foundry received a fax from Dr. Llamas, who asserted that Diaz needed yet another month to recuperate. To resolve the conflict

between Diaz's two physicians, and to learn when it could expect him back at work, the Foundry directed Diaz to report for a physical examination on June 8. This instruction was sent by certified mail to his home address, and the receipt was signed "Alfredo D.". But Diaz neither appeared for the medical examination nor asked the Foundry to set a more convenient schedule. Diaz was fired on June 15 for failing to work despite the end of his leave. This at last persuaded Diaz to communicate with the Foundry: with this lawsuit under the FMLA.

The district court granted summary judgment to the Foundry after stepping through a series of questions inspired by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973): first the employee must establish a *prima facie* case; if this has been done, the employer must articulate a lawful explanation for its conduct; then the burden shifts back to the employee to prove that the statute has been violated. Although the Supreme Court developed this burden-shifting approach as a filter, to concentrate judicial attention on (and limit the burdens of discovery to) the cases with the greatest prospects of success, *see Coco v. Elmwood Care, Inc.*, 128 F.3d 1177 (7th Cir.1997), it has not succeeded at that task even within its original domain. District courts regularly treat the *prima facie* case as a throwaway—holding discovery before deciding whether the plaintiff has satisfied the initial burden, then assuming its existence on the way to resolving the suit on other grounds. That is how the district judge proceeded in Diaz's case, which implies that it is best to take Occam's Razor and slice off unnecessary steps and proceed directly to the question whether the evidence would permit a rational trier of fact to conclude that the statute has been violated. Eventually the burden-shifting framework disappears anyway. If a trial is held, the whole apparatus drops out (although lawyers and judges sometimes forget this, leading to error). See *Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207

(1981); *Achor v. Riverside Golf Club*, 117 F.3d 339 (7th Cir.1997).

Although a burden-shifting approach can be useful in discrimination cases as a heuristic, claims under the FMLA do not depend on discrimination. The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant. A firm may treat all employees equally poorly without discriminating. A statute such as the FMLA, however, creates substantive rights. A firm *must* honor statutory entitlements; when one employee sues, the firm may not defend by saying that it treated all employees identically. The FMLA requires an employer to accommodate rather than ignore particular circumstances. In this respect the FMLA is like the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act, all implemented without using the *McDonnell Douglas* approach. Applying rules designed for anti-discrimination laws to statutes creating substantive entitlements is apt to confuse, even if the adaptation is cleverly done. The district court's approach shows what can go wrong. The judge stated the inquiry this way:

> Under the burden shifting approach, Diaz must initially establish a *prima facie* case of discrimination by showing: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated less favorably than employees who did not avail themselves of the act or that the adverse decision was a result of his invocation of the act. If Diaz is successful in establishing a *prima facie* case, "the burden of production then shifts to the Foundry to show a legitimate nondiscriminatory reason for the challenged employment action ..." If the Foundry produces a legitimate, non-discriminatory reason, the burden shifts back to Diaz to prove by a preponderance of the evidence that the reasons offered by the Foundry are a pretext for discrimination.

This is not a sound extension of *McDonnell Douglas*. Under the FMLA an employee need *not* show that other employees were

treated less favorably. The question is not how the Foundry treats others, but whether it respected each employee's entitlements. This is the big difference between anti-discrimination statutes and laws such as the FMLA that set substantive floors. The FMLA does have an anti-discrimination component: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). But Diaz does not say that he is a victim of discrimination in this sense. The second problem in the district court's summary is the statement that at the third stage the employee must "prove by a preponderance of the evidence that the reasons offered by the [employer] are a pretext for discrimination." This is inconsistent with *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), which held that the employee's burden is to prove a violation of the statute; proof of "pretext" may have evidentiary value but is neither necessary nor sufficient.

Our research has not turned up any appellate decision applying the *McDonnell Douglas* framework to substantive claims under the FMLA. At least one court of appeals has used a derivative burden-shifting approach for claims based on the anti-retaliation provision of the FMLA, see *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir.1997), and we reserve judgment on this possibility. (It is not clear what a burden-shifting approach could add, but at least it would not misdirect attention, as it does for substantive claims.) Although several district judges have used a variant of *McDonnell Douglas* for substantive FMLA cases, see *Kaylor v. Fannin Regional Hospital, Inc.*, 946 F.Supp. 988, 1000–01 (N.D.Ga.1996); *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995), we disapprove their conclusions. We shall continue to resolve suits under the FMLA in the same direct way we did in *Price v. Ft. Wayne*, 117 F.3d 1022 (7th Cir.1997): by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims. Disagreement with the district court's frame-work does not imply disagreement with its judgment, however.

■ An employee who meets the tenure and hours requirements of 29 U.S.C. § 2611(2)(A), as Diaz does, is entitled to as many as 12 weeks of unpaid leave over the course of 12 months "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). To establish the existence of such a condition an employee must submit medical certification. 29 U.S.C. § 2613(a). An employer that doubts the sufficiency or veracity of the certification may require another opinion, § 2613(c):

> (1) In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave. (2) A health care provider designated or approved under paragraph (1) shall not be employed on a regular basis by the employer.

Fort Wayne Foundry exercised its option under § 2613(c), designating a physician that it did not employ on a regular basis (avoiding the ground on which the employer tripped in *Price*). See also 29 C.F.R. § 825.307(A)(2). Diaz does not deny that the disparity between the medical opinions rendered by his two physicians gave the Foundry "reason to doubt the validity of the certification". Yet he did not appear for the medical examination. An employee who fails to cooperate with the second-opinion process under § 2613(c) loses the benefit of leave under § 2612(a)(1)(C) or (D). After missing the appointment set for June 8, Diaz was AWOL and could not invoke the FMLA to avoid discharge.

■ As Diaz sees things, he did not have to appear on June 8 (or ever) because the Foundry sent the notice to Indiana rather than Mexico. Notice sent to his home was

714

the same as no notice, he insists, because the Foundry knew that he was not there. The Foundry responds, without contradiction, that it sent the letter to Diaz's last address of record because this is what its collective bargaining agreement requires, and that the signature "Alfredo D." implied that he had returned from Mexico. Federal labor law requires employers to adhere to collective bargaining agreements; nothing in the FMLA entitles employees to variance from neutral rules about ways and means of giving notice. If Diaz wanted to ensure that he received communications from the Foundry, he had to do one (or both) of two things: (i) tell the people receiving mail (and signing his name) in his absence to open the mail and call him with news (or forward the letters); or (ii) give his employer an address where he could be reached. Diaz asserts that occasionally he called a security guard at the plant to reveal his continuing interest in employment, but the collective bargaining agreement and the firm's work rules require notice to the personnel department, not the security department. What matters for current purposes is that the FMLA does not tell employers how to send notices. A firm safely may use the method prescribed by collective bargaining agreements or some other source of rules. Doubtless the FMLA implies a duty to set a *reasonable* time for the medical examination; the Foundry would have had to allow Diaz a few days to return from Mexico, but he did not ask for more time. As far as the FMLA is concerned, his leave was over. So is this case.

AFFIRMED.