**Sherri E. HITE Plaintiff,**

v.

**BIOMET, INC., Defendant.**

**No. 1:98–CV–0022.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 23, 1999.

---

Cynthia Rockwell, Haller and Colvin, Fort Wayne, IN, for Sherri E. Hite, plaintiff.

Thomas M. Kimbrough, Barrett and McNagny, Fort Wayne, IN, for Biomet, Inc., defendant.

C. Erik Chickedantz, Hawk, Haynie, Gallmeyer & Chickedantz, Fort Wayne, IN, mediator.

### MEMORANDUM OF DECISION
### AND ORDER

WILLIAM C. LEE, Chief Judge.

On January 16, 1998, plaintiff, Sherri E. Hite ("Hite") filed her complaint against Defendant Biomet, Inc. ("Biomet") alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2617, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Hite contends that Biomet retaliated against her after she took medical leave under the FMLA by subjecting her to a hostile work environment and terminating her employment; retaliated against her on the basis of her disability; intentionally interfered with her right to certain short term and long term disability benefits; and wrongfully denied her claims for medical and disability benefits. Biomet denies discriminating against or interfering with Hite's rights and contends that it properly denied Hite the benefits she seeks to recover in this lawsuit.

On March 3, 1999, this Court entered summary judgment in favor of Biomet on all of Hite's claims save her claim of FMLA retaliation arising out of her first FMLA leave. After entry of that Order, the parties became engulfed in a dispute over the potential damages Hite could recover at trial on this remaining claim. As a result, this court vacated the trial date and directed Biomet to file a subsequent motion for partial summary judgment on the issue of damages. In accordance with this directive, on April 16, 1999, Biomet filed its Motion for Partial Summary Judgment together with its Brief in Support. On May 3, 1999, Hite responded by filing her Brief in Opposition to the Motion for Summary Judgment and her Motion for Partial Reconsideration of the March 3, 1999, Order, along with supporting materials. Thereafter, on May 7, 1999, Biomet filed a joint brief addressing both the opposition to summary judgment and the motion for partial reconsideration, as well as a motion to strike Hite's affidavit. Hite filed her reply to the motion for partial reconsideration and her response to the motion to strike on May 20, 1999, to which Biomet replied on May 27, 1999, making all of the motions ripe for review.

For the following reasons, Biomet's Motion for Partial Summary Judgment will be GRANTED in part and DENIED in part; Hite's Motion for Partial Reconsideration will be DENIED; and the Motion to Strike Hite's Affidavit will be GRANTED.

### DISCUSSION [1]

Throughout her case, plaintiff has consistently asserted the existence of two distinct FMLA claims. Her first FMLA claim, a strict retaliation claim, involves Hite's treatment after she took FMLA leave in January, 1996.[2] Hite contends that Biomet retaliated against her after she took this leave by subjecting her to a hostile work environment when she returned to work. According to Hite, the hostile work environment began with her supervisor, Herschel Walters ("Walters") moving her work space into a small cubbyhole, assigning her more arduous tasks, and speaking abruptly and abusively to her. Hite also contends that when she returned from FMLA leave her co-workers gave her the cold shoulder and the silent treatment. At the summary judgment stage, Biomet did not dispute Hite's version of the facts on this issue and failed

---

1. Both the factual background of this case and the applicable summary judgment standard have been detailed previously in this Court's March 3, 1999 and do not bear repeating at this juncture. *Hite v. Biomet,* 38 F.Supp.2d 720 (N.D.Ind.1999). The court assumes the reader's familiarity with the relevant facts contained in that order.

2. Hite took leave at some point in January, 1996 through February 23, 1996 to recover from a medical procedure related to her pregnancy.

to present any evidence of its reasons for moving her work space and assigning her more time consuming work after she returned from leave. As a result, the court concluded that Hite had proffered evidence to support a prima facie case of retaliation which Biomet failed to rebut and thus, denied summary judgment as to that claim.

Secondly, Hite asserted that Biomet discharged her in retaliation for exercising her FMLA rights when she took a second FMLA leave of absence in April, 1996, for depression allegedly caused by her abusive work environment. After reviewing the undisputed facts, this court concluded that Hite's FMLA leave period ended 10 weeks prior to her termination and that Biomet validly terminated Hite's employment after she failed to report to work or supply a medical excuse to remain off work from her second leave of absence, pursuant to Biomet's policy. In so finding, this court concluded that plaintiff presented no evidence that the proffered legitimate nondiscriminatory reasons for her discharge were pretextual and, in particular, Hite had pointed to no evidence which raised an inference of discrimination to rebut the legitimate nondiscriminatory reason proffered for Hite's termination.

It is the distinction between plaintiff's two FMLA claims which has spurred the most recent contention between the parties; that is, what damages can Hite recover if she is successful at trial? Because this court's analysis of the damages Hite is entitled to seek from a jury could differ if this court resolves plaintiff's motion for partial reconsideration of the retaliatory discharge claim favorably to plaintiff, the court shall first address plaintiff's request for partial reconsideration.

### 1. Motion for Reconsideration

As this court has noted once herein and detailed in its March 3, 1999 opinion, plaintiff claims that Biomet discriminated against her by terminating her for having exercised an FMLA right, that is for having taken FMLA leave. Because this type of claim is analogous to retaliation/discrimination claims under other anti-discrimination statutes, this court applied the latest Seventh Circuit authority on the subject and concluded that Hite must meet the rigors of the *McDonnell Douglas* burden shifting approach to draw the necessary inference of Biomet's intent.[3] *See King v. Preferred Technical Group*, 166 F.3d 887, 891 ("Therefore, in the absence of direct evidence of discrimination, we will apply the McDonnell Douglas burden-shifting framework to claims that an employer discriminated against an employee for exercising rights guaranteed by the FMLA."). In analyzing Hite's claim of discrimination, this court concluded that plaintiff both failed to demonstrate a causal connection between her termination and her exercise of FMLA rights and, even if she could demonstrate such a connection, plaintiff "fails to demonstrate that the proffered reason is pretextual." *Hite*, 38 F.Supp.2d at 743.

Before analyzing further plaintiff's argument on this point, it is helpful to the analysis to restate the undisputed facts relating to Hite's retaliatory discharge claim. Taken verbatim from this court's prior order, the pertinent facts to this claim are:

> On May 30, 1996, during Hite's third leave of absence, Dr. Strycker (Hite's treating physician) sent Heeter (Biomet benefits coordinator) a medical leave of absence form for Hite indicating that she was to continue her medical leave indefinitely. (Appendix Exh. 18). Heeter received this information and determined that it was unacceptable because it is Biomet's practice to require a definitive return to work date in order to pay short-term disability payments and continue her excused absence. (Whaley

---

**3.** Plaintiff did not purport to have any direct evidence of discriminatory intent so as to warrant a discussion outside of the context of the McDonnell Douglas approach.

Dep. p. 71). For this reason, Heeter sent a letter, dated May 31, 1996, to Strycker indicating that the indefinite leave period was unacceptable and requesting that he submit a new medical leave of absence slip limiting the medical leave to the date of Hite's next reevaluation or recheck date. Dr. Strycker then forwarded to Heeter a medical slip, dated July 23, 1996, which stated "remain off work until 8–5–96 when [patient] has [appointment] here." Heeter stated that he did not notify Hite of his correspondence with Dr. Strycker regarding definite recheck dates. Because Hite had been on a leave of absence previously, Heeter believed she understood that she was to return to work by the recheck date on her leave slip unless otherwise indicated by a physician. Hite testified that Dr. Strycker mentioned to her that Biomet would not accept an indefinite leave date but indicated to Hite that he was working out the details of her leave with Biomet.

On August 5, 1996 Hite failed to attend her scheduled appointment with Strycker. Hite did not notify Biomet of her failure to attend the appointment nor did Biomet receive any information from Strycker indicating that Hite should remain on medical leave. Because of this absence of information, Biomet assumed that Hite would be returning to work in line with company policy. Heeter's notes and deposition testimony reflect that he contacted Dr. Strycker's office on August 6 and was told that Hite had failed to keep her August 5 appointment and had not rescheduled. (Heeter Dep. Exh. 33; Heeter Dep., pp. 201–202). Heeter's notes and testimony also reflect that he made a second call to Dr. Strycker's office on August 9 at which time he was informed that Hite had not rescheduled her appointment and that Dr. Strycker was "unable to certify the continuation of her disability." (*Id.*). Hite does not dispute that she failed to attend her appointment and did not immediately reschedule it. (Hite Dep. p. 110).

Given this information, when Hite did not return to work for three consecutive days and failed to notify Biomet of the reason for her failure to report to work, Whaley terminated her employment pursuant to Biomet's "no-call/no-show" policy. This policy, contained in the Biomet Team Member Handbook, states "any team member who fails to notify his or her supervisor of three (3) consecutive days of absence will be automatically terminated on the third day." (Appendix Exh. 23). For purposes of Hite's employment status, Whaley stated that she interpreted Dr. Strycker's last medical slip as indicating a return to work date of August 5, 1996. (Whaley Dep. p. 78). Whaley testified that she decided to terminate Hite after receiving information from Heeter that Hite failed to attend her appointment and that he had not received any documentation continuing her disability. (Whaley Dep. p. 76).

Biomet did not inform Hite immediately that she was terminated or that her short term disability benefits were terminated. Hite testified that she stopped receiving a short term disability check and contacted Biomet on August 19, 1996 to inquire about her checks. At that time, Whaley informed Hite of her termination. Whaley followed up this conversation with a letter, also dated August 19, explaining Hite's termination and enclosing a check for her remaining vacation days.

*Hite,* 38 F.Supp.2d at 726–727.

■ Turning first to plaintiff's contention that she presented sufficient evidence of a causal connection between her termination and her FMLA leave to withstand summary judgment, Hite asserts that this court erred in finding that Hite's FMLA leave expired ten weeks prior to her termination and thereby was too far removed from her termination to demonstrate a causal nexus between her FMLA leave and her termination. Hite premises her

argument on the theory that Biomet is permitted to voluntarily provide more FMLA leave than is statutorily required and did so in this case. Thus, Hite argues that she was still on an excused medical leave protected under the FMLA at the time she was terminated.[4] As a result, she contends that she was terminated while on FMLA protected leave, not ten weeks after her FMLA leave ended. This court finds no support in the record or the law for such a distinction.

To support her theory that she remained on an excused medical leave, the plaintiff refers this court to 29 C.F.R. § 825.700. This section addresses the interaction of an employer's internal policies and practices with the employee's rights under the FMLA. In relevant part the section provides: "An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." 29 C.F.R. § 825.700(a). Plaintiff apparently interprets this provision to mean that "once an employer extends the protected leave beyond th[e] 12 week period, the extended period is also protected medical leave under the FMLA." (Plaintiff's response, p. 7).

However, Hite's position is belied by other language in that regulation which states: "If an employer provides greater unpaid family leave than are afforded by FMLA, the employer is not required to extend additional rights afforded by FMLA, such as maintenance of health benefits (other than through COBRA), to the additional leave period not covered by FMLA." 29 C.F.R. § 825.700(a). This clearly indicates that while employers may grant more than twelve workweeks of leave, the additional leave time is not protected leave covered by FMLA safeguards.

In this case, the record indicates that Biomet went above and beyond FMLA requirements and observed a leave policy which provides additional unpaid medical leave to Biomet employees in excess of an employee's right to FMLA leave. This court finds nothing in either the statutory language or the regulations which converts, as Hite suggests, Biomet's benefit plan into covered FMLA leave with the same rights and benefits appurtenant thereto.

With this said, the court is left with the original evidence presented during the initial summary judgment motions. The record reflects that Biomet generously supplied plaintiff with additional leave time, above the twelve weeks of FMLA leave she had exhausted, so long as her physician continued to certify her unable to work. At the time Hite was terminated, Biomet was without any physician certification showing a continued inability to work. At that point, Hite's FMLA leave period had long been expired—in fact, the record reflects that Hite advantageously utilized Biomet's additional benefit policy for at least 10 weeks prior to her discharge.

 In the context of this case, plaintiff must demonstrate that her termination was not wholly unrelated to her taking of FMLA leave. *Hunt–Golliday v. Metropolitan Water Reclamation District,* 104 F.3d 1004, 1014 (7th Cir.1997). Evidence demonstrating the temporal proximity between Hite's taking of the protected leave and her termination is sufficient to satisfy the wholly unrelated requirement. *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir.1994) ("Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity."). In any event, howev-

---

4. Hite presented a different argument in her original brief regarding summary judgment. In her initial brief, Hite conceded that her FMLA leave time expired ten weeks prior to her termination. Given this admission that ten weeks had passed since the end of Hite's

protected activity, this court concluded that no causal connection exists. Now, upon reconsideration, Hite asserts for the first time that the additional ten weeks of leave provided by Biomet was also FMLA leave.

er, an affirmative causal link between adverse employment action and protected activity will not be presumed, but 'must be proved in its own right.' *Hamann v. Gates Chevrolet,* 910 F.2d 1417, 1420 (7th Cir.1990); *see also Jasmantas v. Subaru–Isuzu Automotive, Inc.,* 139 F.3d 1155, 1157 (7th Cir.1998). Simply put, Hite has not met this burden.

■ In *King, supra,* the Seventh Circuit concluded that a one day time frame between the plaintiff's taking of FMLA leave and her termination sufficiently demonstrated a causal connection. *King,* 166 F.3d at 893 ("PTG terminated King only one day after she completed her leave of absence under the FMLA. Such a close proximity is sufficient to establish a prima facie case of retaliation."). That is not this case. Plaintiff's termination occurred 10 weeks after her protected leave ended, after her employer generously provided her additional leave benefits, and after an intervening event—her failure to report to work or provide Biomet with a continuing medical certification which would have permitted her even more leave time. These factors, in addition to the substantial time lapse between the protected activity and the adverse employment action are "counter-evidence of any causal connection." *Johnson v. Univ. of Wis.-Eau Claire,* 70 F.3d 469, 480 (7th Cir.1995). As a result, this court properly concluded that no causal connection existed to support a prima facie case of retaliation.[5]

Moreover, as this court pointed out in its original order, even if a causal connection did exist, Hite fared no better in proving the pretext portion of her claim. Frankly speaking, this court is puzzled by plaintiff's latest spin on her FMLA discrimination claim. In her motion for partial reconsideration, Hite argues that "using the standards set forth in *Diaz v. Fort Wayne Foundry Corporation,* 131 F.3d 711 (7th Cir.1997), for analyzing FMLA violations, Plaintiff was not required to prove the alleged reason for her termination was pretext." (Plaintiff's Brief in Support of Motion to Reconsider, p. 6). This implies, as both Biomet and this court apparently construed it, that plaintiff is now arguing that *McDonnell Douglas* should not apply to her FMLA claim. In her reply brief, plaintiff clarifies her position and states:

At no point in Plaintiff's argument in support of her motion for reconsideration has she stated that the *McDonnell Douglas* burden-shifting approach was not applicable to Plaintiff's FMLA retaliatory discharge claim. Nor has plaintiff argued that '*Diaz v. Fort Wayne Foundry Corporation* should apply to the FMLA violations and that the Court erred when it applied the *McDonnell Douglas* approach. What Plaintiff argued is simply that the *McDonnell Douglas* pretext portion was improperly applied by the court in this case.

(Plaintiff's reply, p. 3). Thus, plaintiff's complaint lies in the pretext analysis this court undertook. Because Hite interprets language in this court's previous order as a determination that she raised an inference of discrimination, Hite believes the court erred by also making her demonstrate pretext. As noted, herein, this court did not err in requiring plaintiff to demonstrate pretext.

Hite's position appears to stem from the Seventh Circuit's holding in *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711 (7th Cir.1997) wherein the panel concluded that the district court erred in requiring the FMLA plaintiff, as part of the third prong of the *McDonnell Douglas* test, to "prove by a preponderance of the evidence that the reasons offered by the employer are a pretext for discrimination." *Diaz,* 131 F.3d at 713. The panel concluded that

---

**5.** Further, to hold Biomet accountable for providing more generous leave time than the statute requires is counterintuitive to the purpose of the Act. Indeed, as the regulations provide, "nothing in the Act is intended to discourage employers from adopting or retaining more generous leave policies." 29 C.F.R. § 825.700(b). The bottom line is that Hite received more than the twelve weeks to which she was entitled under the FMLA.

such a requirement was inconsistent with the holding in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) because "proof of pretext may have evidentiary value but is neither necessary or sufficient." *Id.*[6]

Hite argues that this court recognized that plaintiff tendered sufficient facts from which a jury could reasonably infer discriminatory intent, and thus, under *Diaz* and *St. Mary's Honor Center,* she need not also demonstrate that the proffered reason was not the true reason for Biomet's action. The court finds Hite's argument faulty in several respects.

First, Hite misconstrues the statements made by this court in its previous order. Considering this court's lengthy opinion, plaintiff makes much of an isolated statement in the opinion wherein this court analyzed plaintiff's evidence of pretext relating to her ERISA claim[7] and determined that "[w]hile Hite does articulate a tenable factual scenario, what she has not presented is evidence that Biomet conducted itself in a manner which demonstrates

that its given reason is a lie." *Hite,* 38 F.Supp.2d at 730.[8] The Court thereafter elaborated on the lack of evidence plaintiff set forth demonstrating that the proffered reason was pretextual. Hite construes this court's first statement to mean that "this court recognized that plaintiff tendered sufficient facts from which the jury could reasonably infer discriminatory intent of Defendant, yet this court granted summary judgment for Defendant because Plaintiff did not also prove pretext." (Reply Brief, p. 4.) Not so.

In her brief in opposition to summary judgment, plaintiff set forth an elaborate theory of pretext relating to her ERISA claim which included allegations that Biomet Benefits Manager, Jack Heeter ("Heeter") intentionally and furtively changed her leave status from an "indefinite" period to specific recheck dates; that Heeter's reason for changing the indefinite period to specific recheck dates was to retaliate against her for taking FMLA leave and to deny her short-term and long-term disability benefits; and that Heeter

**6.** In *St. Mary's,* Justice Scalia reiterated the standard for analyzing claims under the *McDonnell Douglas* formulation:

> ...[O]ur opinion in *McDonnell Douglas Corp. v. Green,* established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases. The plaintiff in such a case, we said, must first establish, by a preponderance of the evidence, a 'prima facie' case of ... discrimination...Under the *McDonnell Douglas* scheme, '[e]stablishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee ... Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e. the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'...
> ... 'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case.' The plaintiff then has 'the full and fair opportunity to demonstrate through presentation of his own case and through cross-examination of the defen-

dant's witnesses, 'that the proffered reason was not the true reason for the employment decision and that the [protected factor] was. He retains that 'ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination.

509 U.S. at 507–508, 113 S.Ct. at 2747–2748 (internal citations omitted). Even this standard, however, requires a plaintiff to demonstrate "through presentation of his own case ...that the proffered reason was not the true reason for the employment decision." This is essentially a pretext analysis.

**7.** Notably, plaintiff's ERISA claim was premised on the same facts as plaintiff's retaliatory discharge claim and required application of the same standard for pretext as the retaliatory discharge claim.

**8.** The court acknowledges the possibility of confusion in the use of the term "tenable." To make it unmistakably clear, it is this court's position that plaintiff did have a plausible theory of her case. However, having a plausible theory is not the same as providing sufficient facts supporting that theory from which the jury could infer discrimination. *Compare* FED.R.CIV.P. 12(b)(6) with FED.R.CIV.P. 56.

intentionally failed to inform Hite that a "recheck date" was the same as a return to work date.[9] Given plaintiff's artful theory of pretext and her contention that Biomet orchestrated a plan to terminate her employment for taking FMLA leave, this court concluded that her theory, while conceivable, was simply not supported by any evidence which would lead a fact-finder to an inference of discrimination. Indeed, the court specifically determined that there was uncontroverted evidence that Biomet's practice was to require a definitive return to work date in order to pay short-term disability benefits and continue her excused absence. *Hite*, 38 F.Supp.2d at 730–731. Biomet also supplied ample evidence of its written no call/no show policy and testimony that the policy was routinely applied to employees who failed to call in after three unexcused absences. Finally, Hite has never disputed her failure to attend her appointment with Dr. Strycker's office, her failure to contact Biomet regarding the missed appointment, or her failure to receive a physician's note continuing her leave. As a result of this evidence, the court concluded that Hite failed to demonstrate a genuine issue of fact that Biomet engaged in intentional discrimination.

■ Given that this court never held, as Hite suggests, that her factual scenario was sufficient for a jury to conclude that Biomet engaged in intentional discrimination, the court is confounded by Hite's newest argument. Compounding this court's confusion is plaintiff's reliance on *Diaz* wherein the Seventh Circuit specifically reserved judgment on the applicability of the burden-shifting approach to the anti-retaliation provision in the FMLA. Unlike the present-case, *Diaz* involved substantive FMLA claims. Since *Diaz*,

the Seventh Circuit has specifically applied the *McDonnell Douglas* approach to FMLA retaliation claims and undertaken the same analysis this court undertook in the present case. In *King, supra,* the panel set forth the standard in this fashion:

> Under the third step of the McDonnell Douglas framework, the plaintiff has the opportunity to submit evidence establishing that the employer's proffered reasons are merely a pretext for discrimination. The plaintiff must produce evidence from which a rational fact finder could infer that the employer engaged in intentional discrimination on the basis of the plaintiff's protected trait or action. In order to meet this burden, the plaintiff must proffer significantly probative admissible evidence showing that the employer's articulated reason for the discharge was a pretext for discrimination.

*Id.* (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Because the standard articulated in *King* is the course this court undertook when analyzing plaintiff's claim, and the court concluded there was no evidence demonstrating pretext, it did not err in granting summary judgment on this claim to Biomet.[10]

■ Nevertheless, Hite now asserts, upon reconsideration, that she has presented sufficient evidence of pretext to surpass the summary judgment stage and requests this court to reverse its prior decision. During the pendency of the summary judgment motion, Plaintiff did present evidence which she contends raised a genuine issue of fact as to whether Biomet discriminated against her when it terminated her employment. This evidence was

---

**9.** Apparently, part of Hite's argument is that Heeter had both the knowledge and forethought to commit all of these alleged acts between March and June, 1996 to "set Hite up" for failing to attend a physician's appointment in August, 1996 and thus, for terminating her employment.

**10.** To the extent that Hite believes the Seventh Circuit's holdings in *King* and *Diaz* conflict, she is entitled to pursue the argument on appeal.

in the form of a one paragraph argument in her brief in which plaintiff stated:

> The reason given for terminating Plaintiff was for her violation of company policy in not showing up or calling into work for three days. This reason is non-sensical [sic] since Defendant also had a policy of requiring team members on medical leave to obtain a written doctor's statement before returning to work. Plaintiff did not have a written doctor's statement releasing her to return to work. Accordingly, Plaintiff was not allowed to return to work based on Defendant's own clear policy language.

(Plaintiff's Brief in Opposition to Summary Judgment, p. 16). Upon reconsideration, plaintiff attempts to bolster this argument by submitting an affidavit which states: "Prior to the medical leave in issue in my present case against Biomet, I had taken prior medical leaves while working at Biomet. On these prior medical leaves, I was not allowed to return to work unless I had a written release from my doctor to give to my supervisor, Herschel Walters, even when my doctor's statement in support of my leave had a specified return to work or recheck date." Hite Affidavit, ¶ 5–6. Hite also attempts, through her belated affidavit, to present other evidence which could have been presented during the initial summary judgment briefing. (Hite Affidavit, ¶ 7: Herschel Walters would not have allowed me to return to work on August 5, 1996, without a doctor's slip releasing me to return to work on that date. I never had to discuss return to work following sick leave with anyone else at Biomet.). In its most recent submission, Biomet objects to Hite's affidavit and moves to strike it from the record.

This affidavit testimony is an attempt to do indirectly what plaintiff cannot do directly. It is a plain attempt to reopen the summary judgment record through a motion for reconsideration and is clearly prohibited in this circuit. Indeed, in *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996), the Seventh Circuit held:

> A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.' Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited. Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.

*Id.* (citations omitted). Thus, this court shall not consider plaintiff's affidavit testimony to the extent that it presents new evidence or new factual allegations which could have been raised during the initial summary judgment proceedings. Biomet's Motion to Strike is GRANTED.

Nonetheless, even accepting as true the allegations that Biomet had a policy requiring an employee to submit a written release before returning to work, this is merely a "scintilla of evidence" which provides only "some metaphysical doubt," as to the material facts and is insufficient to overcome summary judgment. *Matsushita Electric, Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir.1998) ("party needs more than scintilla of evidence ... to defeat summary judgment"). Hite's argument on this score is that even had she complied with Biomet policy by returning to work on August 6 after she failed to attend her doctor's appointment on August 5, Biomet would have refused to permit her return. Of course, this argument puts the cart before the horse. Neither the court, nor Hite herself, can speculate that Biomet would have refused her return to work since she failed to even attempt such a return following her missed physician's appointment. More importantly, evidence that Biomet had a policy requiring Hite to receive a written physician's notice before returning to work

is not probative evidence which refutes Biomet's proffered reason for terminating Hite, i.e. failure to comply with the no call/no show policy.

In sum, the evidence in this case shows that Biomet had a written no call/no show policy which required employees to call in or notify Biomet of their failure to report the work for three consecutive days. There is no dispute that Hite failed to comply with the policy. Hite provided no medical certification continuing her medical leave of absence past August 5, 1996 because she failed to attend the doctor's appointment which would have presumably provided her such certification. Biomet had a physician's notice which authorized Hite's medical leave through August 5, 1996. When it failed to receive a continuing certification, Biomet assumed Hite was no longer disabled and would report for work. Hite never reported for work and never contacted Biomet to notify them of her missed appointment. Further, plaintiff did not dispute Biomet's evidence that Heeter contacted Hite's physician at least twice and was told that Hite missed her appointment, had not rescheduled it, and that he could not certify her as unable to work. After Hite failed to report or call in for three consecutive days, Biomet terminated her employment in accordance with its policy.[11] Absent some evidence from Hite that Biomet's reason was pretextual, she has not raised a genuine issue of fact. Accordingly, this court properly granted summary judgment in favor of Biomet. Plaintiff's motion for reconsideration is DENIED.

## 2. *Partial Summary Judgment Relating to Damages*

In its motion for partial summary judgment, Biomet contends that the FMLA forecloses Hite from recovering emotional damages, punitive damages, and lost wages. With respect to the claim of lost wages, Biomet argues that because this Court concluded that Hite was terminated for a legitimate, nondiscriminatory reason she is not entitled to lost wages, period. Similarly, Biomet asserts that because Hite has never proffered a theory of constructive discharge, Hite is precluded from seeking lost wages altogether.[12] As a result, Biomet contends, Hite is entitled to no damages if she succeeds on her retaliation claim at trial. In response, Hite makes no argument that she is entitled to emotional or punitive damages, but cites

11. Plaintiff also states that "neither Defendant or the Court ever addressed the fact that Plaintiff had a valid, indefinite leave of absence at the time of her termination from Keith Piper, another of Plaintiff's health care providers ..." (Plaintiff's response, p. 6). In her original response, plaintiff submitted a letter dated June 28, 1996, from Dr. Piper which indicated that Hite was suffering from severe mental anxiety and stress and that "this condition prevents her from being able to return to her job." Plaintiff contends that this evidence demonstrates that Biomet's reason for terminating her was pretextual. This court disagrees.

Heeter testified, and his testimony is undisputed, that Dr. Strycker was the physician who was providing Biomet with information concerning Hite's disability and "he was the one who had completed the disability form and assumably taken responsibility for [certifying] her disability ..." (Heeter Dep. p. 183). Heeter further testified that as the certifying physician, Strycker was akin to a primary care physician and would receive copies of notes from other care providers. (Heeter Dep. p. 188). Thus, Heeter believed Strycker was obtaining information from Hite's other care providers and certifying her disability accordingly. In addition, Heeter stated that Dr. Piper's letter "doesn't mean a whole lot to me, in that he wasn't actually administering her disability. It just means that he was treating her." (Heeter Dep. p. 197). Given this undisputed testimony, Biomet clearly relied on information it received from Dr. Strycker's ofice concerning Hite's continuing disability certification. When it received no such certification and Hite failed to return to work, she was terminated. This evidence simply does not demonstrate that Heeter's belief that Dr. Strycker was the certifying physician was not honestly held or a lie.

12. In her brief, Hite disavows any claim that she is pursuing a constructive discharge theory or that she has ever alleged such a claim. Thus, this is not a contested issue before the court.

the statutory language of the FMLA as support for the proposition that she is entitled to lost wages. Hite's theory is that despite this court's ruling that she was validly terminated, she is entitled to damages for lost wages past the point of her termination if she can demonstrate that the retaliation proximately caused her termination. The court shall address these arguments in turn.

■ An employer who violates the FMLA is liable:

(A) for damages equal to -

(i) the amount of:

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case which wages, salary, employment benefits or other compensation have not been denied or lost to the employee, any monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

29 U.S.C. § 2617(a)(1). In addition, an employer may be liable for prejudgment interest, liquidated damages in an equal amount, and attorney's fees. 29 U.S.C. § 2617(a). From the statutory language, it is clear that there are two types of damages available to a plaintiff. If a plaintiff claims that she has lost wages, salary, or benefits as a result of the employer's FMLA violation, then the plaintiff can recover damages pursuant to § 2617(A)(i)(I). If the plaintiff is not claiming any lost wages, salary, benefits, or other compensation based on an FMLA violation, she can recover using § 2617(A)(i)(II). See 29 C.F.R. § 825.400 (stating that where no such tangible loss [wages, etc.] has occurred the employee can recover any actual monetary losses sustained by the employee as a direct result of the violation of the FMLA.) The parties do not dispute that Hite is claiming lost wages and benefits as a result of Biomet's FMLA violation and do not argue that she can recover actual monetary losses. Thus, the analysis focuses solely on the issue of what wages Hite is entitled to recover.[13]

■ Hence, the court turns to these disputed questions: (1) whether Hite is entitled to any lost wages at all, and, if so, (2) whether Hite is entitled to lost wages after August 9, 1996, her date of termination. Initially, the court is concerned by Biomet's argument that because this court concluded that plaintiff was validly terminated, it can elude liability for any illegal retaliation that occurred prior to Hite's discharge and thus, Hite is not entitled to any wages she lost as a result of the retaliatory conduct. The legitimacy of Hite's discharge alone does not prevent her from seeking to recover for the retaliatory conduct she allegedly suffered prior to that discharge. While on the leave of absence, Hite received short-term disability payments which supplemented her normal paycheck at 60% of her normal salary. Thus, at a minimum, Hite is entitled to receive the 40% of her salary which she did not receive as a result of Biomet's

---

13. Biomet argues, without any opposition, that Hite is not entitled to damages for emotional distress or punitive damages. The statutory language is silent as to a prevailing plaintiff's recovery of emotional and/or punitive damages, which indicates, at first glance, the unavailability of such damages. This indication is confirmed by the cases which have addressed the issue and uniformly determined that an FMLA plaintiff is not permitted to recover either emotional damages or punitive damages. See Divizio v. Elmwood Care, Inc., 1998 WL 292982 (N.D.Ill. May 28, 1998) ("This court will follow the majority of districts that have found punitive damages are unavailable under the FMLA."); (Steck v. Bimba Manufacturing Company, 1997 WL 685003 (N.D.Ill. October 30, 1997)) (punitive damages unavailable under FMLA); Settle v. S.W. Rodgers, Co., Inc., 998 F.Supp. 657 (E.D.Va.1998) ("thus, by its own terms, the FMLA does not provide for either punitive damages or for damages for emotional distress"). Thus, in line with these cases, Hite is foreclosed from requesting emotional or punitive damages on her FMLA claim.

retaliatory conduct. The evidence reflects that Hite did return to work for one day in April, 1996. Assuming Hite received her full salary for that day, Biomet is entitled to an offset for that work day. But, this is not the end of the question, for plaintiff urges that she is entitled to recover more.

Hite asserts that she is entitled to recover damages even after her termination date because her termination was proximately caused by Biomet's retaliatory work environment. Plaintiff's position is that she is entitled "to recover the value of the salary and the lost Biomet short-term and long-term disability benefits from the date of her termination until the present or until those benefits would have expired, the difference in her normal pay and her disability pay during her medical leave of absence, and reinstatement or front pay." Hite's Response to Motion for Summary Judgment, p. 6. Hite sets forth her reasoning as follows:

> Plaintiff would never have been terminated but for the fact that she was unable to work due to the emotional breakdown caused by Biomet's retaliatory conduct towards her. Had Plaintiff not needed to be on an FMLA leave, she would not have been terminated because her doctor failed to inform Biomet that she was still unable to return to work on her recheck date.

Plaintiff's Reply Brief, p. 3.[14]

This issue is complicated for numerous reasons, not the least of which is the parties' failure to provide any case authority supporting their respective positions and this court's inability to locate any independently. Even more of a complicating factor, is the competing interests and unique policy concerns which underlie this dispute. First, there is the public policy served by the FMLA: "FMLA is intended to allow employees to balance their work and family life by taking reasonable unpaid leave for medical reasons … The Act is intended to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote the national interests in preserving family integrity." 29 C.F.R. § 825.101(a). Certainly, an employer who retaliates against an employee for exercising FMLA rights violates this policy and, pursuant to the statutory language, must pay damages to the aggrieved employee. What makes the present scenario unique, however, is that Biomet may have retaliated against Hite, but that retaliation is distinct from her termination. As this court has stated, Hite's termination was valid. Because of this odd factual scenario, this case implicates the long-standing rule that an employer may terminate an employee-at-will for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. *Allard v. Indiana Bell Telephone Co. Inc.*, 1 F.Supp.2d 898, 932 (S.D.Ind.1998). Given these two competing interests, the court is left with the daunting task of examining this issue and crafting a resolution which balances the parties' respective interests.

Common sense dictates that a valid discharge subsequent to a discriminatory act cuts off an employer's liability for backpay arising out of discriminatory conduct occurring prior to the discharge. This is logical because the valid termination of an employee severs the employment relationship and the joint obligations which compose such a relationship. In this way, the employer's liability is limited since the valid termination is, essentially, a superseding

14. In her response brief, Hite also writes:
The reason Plaintiff did not return to work or call in on August 5, 1996, was due to the fact that her extreme depression immobilized her and she was unable to leave her home, the only place she felt safe. Defendant's conduct in creating a hostile retaliatory workplace environment in March, 1996, proximately caused Plaintiff's failure to keep her doctor's appointment and Plaintiff's termination of employment because she did not keep her doctor's appointment
(Plaintiff's Response, p. 5).

cause which relieves it from further liability for backpay awards. Courts have recognized this principle, albeit in a different context, when dealing with similar issues in discrimination cases.

■ For instance, in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995), the Supreme Court held that an employee's discrimination lawsuit is not precluded by the fact that the employer later discovers (presumably during the subsequent discrimination litigation) evidence of wrongdoing by the employee which provides the employer legitimate grounds for dismissal. *Id.* at 357, 115 S.Ct. at 884. However, such after-acquired evidence does bear on the Plaintiff's array of available remedies; the employer is not required to offer reinstatement or provide front pay, and only has to provide backpay from the date of the discharge to the date the after-acquired information was discovered. *Id.* at 362, 115 S.Ct. at 886. Thus, in such a case, even if the employer acted in a discriminatory manner initially by terminating the employee based on a protected characteristic, if the employer subsequently uncovers evidence which would have resulted in the employee's valid termination, the employer's liability severs at the point the evidence was uncovered.

■ The present case is not far removed from the theory espoused in *McKennon.* Here, Hite was validly terminated. Prior to that valid termination, this court concluded that a triable issue existed as to whether Biomet retaliated against Hite by creating a hostile work environment after she returned from FMLA leave. Thus, even if a jury concluded that Biomet retaliated against Hite, her damage recovery is limited to the date of her lawful termination. Hite's unlawful retaliation claim and her retaliatory discharge claim are two distinct claims this court considered. Although many of the same facts applied to these claims, this court held that Biomet did not engage in illegal conduct by terminating Hite for a legitimate, nondiscriminatory reason. Hite's own conduct resulted in her termination, not any conduct on the part of the employer. While under certain circumstances an argument exists that the employee should recover for workplace harassment which contributes to an employee's disability and thus, her discharge, this is not such a case. *See Wilson v. Chrysler Corp.*, 172 F.3d 500 (7th Cir.1999). Hite was not discharged because of her disability (which she contends was caused by Biomet's conduct), but because she failed to comply with corporate policy to remain on a leave of absence. Accordingly, this court concludes that Hite is foreclosed from claiming post-termination backpay.[15]

Restricting plaintiff's backpay recovery is the result which best balances the two competing interests at stake in this litigation. Hite, if the jury so finds, is entitled to be compensated for lost earnings she suffered as a result of Biomet's retaliatory conduct. This court's resolution permits Hite to recover such damages. Likewise, Biomet is entitled to terminate employees for nondiscriminatory reasons without interference from the court.[16]

---

**15.** In her brief, Hite also mentions reinstatement as a possible remedy. This court is again puzzled by Hite's assertion that reinstatement is a remedy to which she is entitled. Hite's position throughout her brief is that, to date, she still remains unable to work as a result of her stress and anxiety. Further, since this court has concluded that Hite's termination is valid, reinstatement is not an appropriate remedy. As the *McKennon* court noted, "It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and

will terminate, in any event and upon lawful grounds." *McKennon*, 513 U.S. at 362, 115 S.Ct. at 886.

**16.** This conclusion is further bolstered by an unreported decision from the Second Circuit addressing the precise issue presented in this case. In *Hatter v. New York City Housing Authority*, 165 F.3d 14 (table), 1998 WL 743733 (2nd Cir. October 22, 1998), the court refused to permit a plaintiff alleging a hostile work environment based on age to recover damages after the time of her subsequent

### CONCLUSION

Based on the foregoing, Defendant's Motion for Partial Summary Judgment is GRANTED as to plaintiff's claim for punitive and emotional damages; GRANTED as to Hite's claim for lost wages, salary, and benefits after the date of her lawful termination; but DENIED as to Hite's claim for lost wages, salary, and benefits she incurred by taking medical leave because of Biomet's alleged retaliatory conduct until the date of her termination; Defendant's Motion to Strike Hite's Affidavit is GRANTED; and Plaintiff's Motion for Partial Reconsideration is DENIED.

valid nondiscriminatory termination. The second circuit reasoned that "such remedies are only available when the employee's separation from employment results from the discriminatory conduct." *Id.* at *2. Although given only persuasive weight in this circuit, Hatter's holding reconfirms this court's initial impression of Hite's request to recover post-termination wages.