Debra Lee O'CONNOR, Plaintiff-Appellant,

v.

PCA FAMILY HEALTH PLAN, INC., Defendant-Appellee.

Nos. 97-5879, 98-5121.

United States Court of Appeals,

Eleventh Circuit.

Jan. 18, 2000.

Appeals from the United States District Court for the Southern District of Florida. (No. 96-8502-Cv-WJZ), William J. Zloch, Judge.

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and PROPST[*], Senior District Judge.

KRAVITCH, Senior Circuit Judge:

The primary issue these consolidated appeals present, and one of first impression in this circuit, is the scope of employment protection afforded by the Family Medical and Leave Act of 1993 (the "FMLA"), 29 U.S.C. §§ 2601—54; specifically, we address the circumstances under which an employer may terminate an employee on FMLA leave. Plaintiff-Appellant Debra O'Connor brought suit against PCA Family Health Plan, Inc. ("PCA"), her former employer, claiming PCA violated the FMLA by terminating her employment and attendant benefits while she was exercising her statutory right to FMLA leave. The district court found no such violation. We agree and therefore AFFIRM.

*I. BACKGROUND*

In March 1995, O'Connor entered the employ of PCA as an Account Executive in PCA's Boca Raton, Florida, office. O'Connor learned she was pregnant in August of that year and notified PCA of her intention to take maternity leave for the birth and post-natal care of her child. Under the terms of PCA's employee benefits policy, O'Connor had several leave options, including FMLA leave, sick and vacation leave, short-term disability leave, and leave without pay. She discussed these options with her supervisors in PCA's

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Boca Raton office and requested a period of FMLA leave commencing April 22, 1996, and ending August 1, 1996. PCA's regional Human Resources Department (the "HRD") for the state of Florida, housed in PCA's Miami office, instead approved a leave package commencing on April 18, 1996, the day after O'Connor's last scheduled day of work,[1] and ending on July 10, 1996. O'Connor's child was born on May 2.

In June 1996, economic losses experienced during the previous two years compelled PCA to undergo a reduction in force ("RIF"). PCA implemented the RIF in multiple phases, the first occurring on July 1, 1996, with the termination of 190 employees. PCA's HRD selected these employees from lists submitted by the supervisors of various departments throughout PCA's Florida offices. O'Connor's name was one of those submitted. While compiling the final roster of employees to be terminated in the first phase of the RIF, the HRD reviewed the submitted lists for employees who, as of the date of the first phase of the RIF, would be on leave. The HRD flagged two employees and removed them from the final roster, opting to reassess their employment statuses after they returned from leave. The HRD, however, failed to flag O'Connor's name; consequently, PCA terminated O'Connor as part of the first phase of its RIF.

On or about July 11, 1996, O'Connor learned of her termination and contacted her former supervisor in the Boca Raton office to inquire as to the reason. The supervisor notified the HRD that an employee on leave had been terminated. Odalys Torres, who at the time was PCA's Director of Human Resources for Florida, investigated and concluded that the HRD in fact should have removed O'Connor's name from the RIF roster, as it did with the other two employees then on leave. On or about August 15, PCA orally offered to reinstate O'Connor to her former position, but she declined.

On July 23, 1996, O'Connor filed a complaint with the United States District Court for the Southern District of Florida, alleging PCA violated the FMLA by terminating her while she was on FMLA leave (Case No. 97-5879, the "FMLA suit"). On or about October 1, 1996, she also filed charges with the Equal

---

[1] O'Connor's last scheduled day of work was April 17, 1996. She planned to take personal leave for the work days between that date and April 22 to delay the commencement of her FMLA leave. The HRD, however, designated April 18 as her first day of FMLA leave.

Employment Opportunity Commission (the "EEOC") and the Florida Commission on Human Relations, alleging discrimination based on her gender, age, and pregnancy status in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e; the Age Discrimination in Employment Act of 1967 (the "ADEA"), as amended, 29 U.S.C. §§ 621-634; and the Florida Civil Rights Act, Fla. Stat. ch. 760.01-.854. The EEOC took no action on O'Connor's complaint, and on August 18, 1997, O'Connor requested and received her Notice of Right to Sue.

O'Connor's FMLA suit was adjudicated in a bench trial before the district court on August 25, 1997. The district court announced its judgment on September 24, 1997, holding that PCA had not violated the FMLA by terminating O'Connor while she was on FMLA leave.

On November 17, 1997, O'Connor exercised her "right to sue" by filing a second suit against PCA, alleging the various charges of discrimination included in her EEOC complaint (Case No. 98-5121, the "employment discrimination suit"). PCA immediately moved for summary judgment on the ground that the prior adjudication of O'Connor's FMLA suit has *res judicata* effect on all claims included in her second suit. The district court agreed and granted PCA's motion for summary judgment on June 30, 1998.

## II. ANALYSIS

### A.    CASE NO. 97-5879:  THE FMLA SUIT

The FMLA provides that an "eligible employee"[2] is entitled to a maximum of twelve weeks of leave[3] during which her employment status is protected.[4] The FMLA recognizes two types of claims for alleged

---

[2]"The term 'eligible employee' means an employee who has been employed—(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A) (1999). The parties do not dispute O'Connor was an "eligible employee."

[3]"[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter...." *Id.* § 2612.

[4]"[A]ny eligible employee who takes leave under section 2612 ... shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position...." *Id.* § 2614(a)(1).

3

violations of these provisions: interference claims,[5] in which employers burden or outright deny substantive statutory rights to which their employees are entitled, *see* 29 U.S.C. § 2615(a)(1) (1999), and retaliation claims,[6] in which employers discharge employees for exercising their FMLA right to leave, *see id.* § 2615(a)(2). O'Connor's complaint did not specifically characterize her FMLA claim as either, but rather asserted some nonspecific violation of the FMLA. In its resolution of the claim, however, the district court construed O'Connor's complaint to allege only a retaliatory discharge. O'Connor appeals this as error, contending she also properly presented an interference claim to the district court.

We must first resolve the character of the FMLA claim O'Connor submitted to the district court, a question of law we review *de novo. See Massaro v. Mainlands Section 1 & 2 Civic Ass'n,* 3 F.3d 1472, 1475 (11th Cir.1993). After reviewing the record, we are satisfied O'Connor presented sufficient evidence at trial in support of both cognizable causes of action. The testimony and documentary evidence elicited at trial reveal O'Connor's attempt to establish that PCA denied her statutory right to reinstatement upon return from leave, as provided by 29 U.S.C. § 2614(a)(1).[7]

In opposition to our conclusion, PCA directs our attention to the Joint Pretrial Stipulation, in which the parties framed O'Connor's allegation of improper termination as being "in response to her having requested pregnancy leave."[8] Although this phrasing may suggest O'Connor believed her termination was retaliatory, we note that this statement was included in the Stipulation's Statement of the Case, rather than as an Issue of Law for the Court; the actual issue presented to the district court was simply, "Whether PCA

---

[5]"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1).

[6]"It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *Id.* § 2615(a)(2).

[7]*See* R2 (Case No. 97-5879) at 84-135 (cross-examination of HRD Director Torres by Plaintiff's counsel).

[8]*See* Joint Pretial Stipulation at 2, *in* R1 (Case No. 97-5879) at Tab 26.

violated the FMLA?"[9] We are not satisfied that the language to which PCA points precluded O'Connor from also arguing an interference claim at trial. We therefore conclude the district court erred in not considering both types of FMLA claims in deciding whether PCA violated the statute. Moreover, because we find the factual record to be well-developed, we choose to resolve the interference claim ourselves,[10] rather than remand the case to the district court.[11]

The standard for establishing an interference claim under the FMLA is an issue of first impression in this circuit, but other courts have addressed it. *See Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712-14 (7th Cir.1997); *see also Hubbard v. Blue Cross Blue Shield Assoc.,* 1 F.Supp.2d 867, 874-75 (N.D.Ill.1998) (applying *Diaz* ); *Kaylor v. Fannin Regional Hosp., Inc.,* 946 F.Supp. 988, 996-97 (N.D.Ga.1996); *cf. Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159-60 (1st Cir.1998) (recognizing interference claims and citing *Diaz* ). In *Diaz,* the Seventh Circuit held that if an employee proves by a preponderance of the evidence she is entitled to the benefit she claims and that her employer interfered with or denied that benefit, the employer violated the FMLA. *See* 131 F.3d at 713. O'Connor argues 29 U.S.C. § 2614(a)(1) provides that an employee returning from leave is entitled to reinstatement, yet PCA denied her

---

[9]*See id.* at 3.

[10]Although we find O'Connor presented both claims to the district court, she does not appeal the district court's analysis of the retaliation claim, to which it applied the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and common to employment discrimination claims. She has therefore abandoned the issue. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989).

[11]This court may decide this issue because we hold *infra* that even under this alternate theory of recovery, PCA did not violate the FMLA, and thus affirm the district court's final judgment. *See Parks v. City of Warner Robins,* 43 F.3d 609, 613 (11th Cir.1995) (holding this court may affirm a district court on any basis). Furthermore, because this court may consider issues not even raised before the district court when they are pure legal questions or the proper outcome is beyond doubt, *cf. Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994) (stating the five exceptions to the general rule against considering such issues), disposing of such an issue actually presented to but not addressed by the district court is certainly within our discretion.

5

that benefit by terminating her before her leave expired,[12] thus proving her claim. Essentially, O'Connor, relying on *Diaz,* asserts that all FMLA rights, including reinstatement, are absolute.

Although we find no fault with the Seventh Circuit's interpretation of the FMLA, it is not completely apposite to this case. The *Diaz* plaintiff requested but was denied his twelve weeks of leave for an alleged medical condition as authorized by 29 U.S.C. § 2612(a)(1)(D), and the Seventh Circuit held the FMLA does not permit employers to deny such a request, provided the employee follows proper procedure.[13] *See* 131 F.3d at 713. Unlike the right to commence leave, an employer can deny the right to reinstatement in certain circumstances, *see Ilhardt v. Sara Lee Corp.,* 118 F.3d 1151, 1157 (7th Cir.1997) (holding an employer may terminate an employee on FMLA leave as part of a RIF), because United States Department of Labor regulation qualifies the right.

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. *An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.* For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave ... the employer's responsibility to continue FMLA leave, maintain group health plan benefits and *restore the employee* cease at the time the employee is laid off.... An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

---

[12]There is some confusion as to whether O'Connor was still on FMLA leave on the date of her termination. Under the leave package approved by the HRD, O'Connor's FMLA leave expired on July 10,1996, twelve weeks after her last day at work, April 17, 1996. The letter announcing O'Connor's termination was initially dated July 1, 1996, but once HRD Director Torres learned O'Connor was on leave on July 1, she allegedly post-dated the effective date of O'Connor's termination to reflect her last date of protected leave. PCA argues that because O'Connor received the entire twelve weeks of leave to which she was entitled, she has no actual FMLA claim. *See Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1275 (11th Cir.1999) (*per curiam* ). The district court, without explanation, found O'Connor was on FMLA leave when she was terminated. The record testimony surrounding this issue is ambiguous at best, so we are unable to conclude the district court clearly erred in finding this fact. Furthermore, the issue is mooted by our eventual holding that, even assuming O'Connor was on FMLA leave when terminated, the termination did not violate the FMLA.

[13]We note that the Seventh Circuit ultimately held that the plaintiff did not qualify for relief because he had not complied with his employer's request for a second medical opinion, as is an employer's right under the FMLA, 29 U.S.C. § 2613(c). *See Diaz,* 131 F.3d at 713-14.

29 C.F.R. § 825.216(a) (1999) (emphasis added). We hold that when an "eligible" employee who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even had she not been on FMLA leave. The district court found that PCA slated O'Connor for termination as part of the first phase of its RIF, the legitimacy of which O'Connor has never challenged. We have no reason to dispute that finding, *see Massaro,* 3 F.3d at 1475 (reviewing findings of fact for clear error), and therefore conclude PCA was justified in terminating O'Connor even while she was on FMLA leave.

O'Connor emphasizes PCA's election to remove two other employees on FMLA leave from the final RIF roster while failing to do the same for her as evidence of PCA's awareness of a duty to refrain from terminating all employees on FMLA leave. We find this argument to be without merit. PCA's *voluntary* adoption of an employment policy designed to avoid legal entanglements (ironically unsuccessful) does not expand the scope of legally enforceable employment protection beyond that which the statute affords.[14] If anything, PCA's oversight of O'Connor's name and failure to remove it from the final RIF roster only indicate that O'Connor's FMLA status played no part in PCA's decision to discharge her.

After fully considering O'Connor's interference claim, we agree with the district court's ultimate conclusion that the termination of O'Connor during her period of FMLA leave, because it was part of a legitimate RIF, did not violate the statute.

B.      CASE NO. 98-5121:  THE EMPLOYMENT DISCRIMINATION SUIT

1.      *Res Judicata*

---

[14]At trial, O'Connor brought to the district court's attention 29 C.F.R. § 825.700(a) (1999), which explains "[a]n employer must observe any employment benefit program or plan that provides greater family or medical rights to employees than the rights established by the FMLA." O'Connor argued PCA's removal of employees on FMLA from the RIF roster was tantamount to such a "program or plan," requiring PCA to treat all similarly situated employees equally. O'Connor did not reassert this argument on appeal, however, so we deem it waived. *See Greenbriar,* 881 F.2d at 1573 n. 6.

In its grant of summary judgment, the district court held O'Connor's FMLA suit had *res judicata* effect on the discrimination claims brought in her second suit, thus barring those claims. We review this conclusion of law *de novo. See Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992).

The Supreme Court has explained that following "a full and fair opportunity to litigate[, *res judicata* ] protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979). *Res judicata* thus precludes claims which a plaintiff actually raised or could have raised in a prior suit when (1) there is a final judgment in a prior suit on the merits; (2) the decision in the prior suit is rendered by a court of competent jurisdiction; (3) the parties in both suits are identical; and (4) both suits involve the same cause of action. *See Citibank, N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1501 (11th Cir.1990). The first three elements are obviously satisfied in this case and do not warrant discussion. As for the fourth element, in *Citibank,* this court explained that " 'if a case arises out of the same nucleus of operative fact ... as a former action, [then] the two cases are really the same "claim" or "cause of action" for purposes of *res judicata.*' " *Id.* at 1503 (quoting *Ruple v. City of Vermillion,* 714 F.2d 860, 861 (8th Cir.1983)). Because O'Connor's FMLA claim and her other discrimination claims all issue from a single event, namely, the termination of her employment, we conclude *res judicata* bars O'Connor's second suit; the district court's grant of summary judgment was proper.

In an attempt to persuade us otherwise, O'Connor cites *Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1357-59 (11th Cir.1998), in which this court held *res judicata* did not bar a plaintiff's second discrimination claim in a separate suit, even though it was against the same employer and was known to the plaintiff prior to the adjudication of her earlier suit. The cornerstone of *Pleming* 's holding, however, was that the circumstances giving rise to the allegations of the second suit occurred *after* she filed her first suit; in other words, the claims brought in each suit were premised on entirely different instances of alleged

8

discrimination. *See id.* O'Connor's reliance on *Pleming* is therefore misplaced. We iterate that in the instant case, the nucleus of facts from which O'Connor's employment discrimination claims stem is identical to that underlying her FMLA claim.

O'Connor contends the procurement of her EEOC Notice of Right to Sue ("Notice"), which she received after she filed her FMLA suit, rather than her termination, gave rise to her discrimination claims. She argues that because she was unable to bring her discrimination claims prior to evaluation by the EEOC during a statutory 180-day waiting period, *see* 42 U.S.C. § 2000e-5(f) (1994), her second suit involves "new rights acquired," against which a previous judgment has no preclusive effect. *See Pleming,* 142 F.3d at 1357 (citing *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir.1992) (quoting *Los Angeles Branch, NAACP v. Los Angeles Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir.1984))). Again, O'Connor's reading of *Pleming* ignores the context of the decision. Because the claims brought in each of the plaintiff's suits were premised on entirely different episodes of alleged discrimination, the *Pleming* court simply held that the plaintiff was not required to join unrelated claims in a single suit and that the adjudication of one of those claims did not preclude the other. O'Connor's claims, on the other hand, all relate to the termination of her employment and should have been brought together.[15] Contrary to O'Connor's implied suggestion, *Pleming* did nothing to alter our usual approach to *res judicata,* which focuses on the identity of the *factual circumstances* from which various claims or theories of recovery may arise. *See Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1240 (11th Cir.1999) (also interpreting *Pleming* to not alter our usual approach to *res judicata* ). Accordingly, we agree with the district court that *res judicata* bars the claims brought in O'Connor's employment discrimination suit.

2.      *Attorney's Fees*

---

[15]O'Connor could have either delayed filing or continued her FMLA suit until she received her Notice. Furthermore, O'Connor did not request her Notice until August 18, 1997, only a week before she adjudicated her FMLA suit. She could have requested the Notice as early as April 1, 1997, the approximate date on which the EEOC's 180-day waiting period expired and nearly five months prior to the first trial; O'Connor would have had ample time to amend her initial complaint to include the additional claims.

Following the district court's grant of summary judgment in the employment discrimination suit, PCA moved for prevailing defendant attorney's fees pursuant to 42 U.S.C. § 1988, but the district court has yet to rule on the motion. PCA, therefore, requests this court to rule on the appropriateness of an attorney's fees award, but remand for a determination of the amount. Because the motion is still pending before the district court, however, we do not address the issue.

### III. CONCLUSION

The judgment of the district court in each case is hereby AFFIRMED.