Joseph LANGLOIS, Plaintiff,

v.

**CITY OF DEERFIELD BEACH, FLORIDA a Florida Municipal Corporation, Defendant.**

No. 03–62051–CIV.

United States District Court, S.D. Florida. Miami Division.

March 23, 2005.

William H. Pincus, Romin N. Currier, Law Offices of William H. Pincus, West Palm Beach, FL, Counsel for Appellant.

Kerry Ezrol, Goren, Cherof, Doody & Ezrol, PA, Fort Lauderdale, FL, Counsel for Appellee.

*FINAL ORDER OF DISMISSAL GRANTING PLAINTIFF'S, JO-SEPH LANGLOIS', MOTION FOR SUMMARY JUDGMENT ON COUNTS I, III & IV AND DENY-ING DEFENDANT CITY OF DEERFIELD BEACH'S MOTION FOR SUMMARY JUDGMENT ON COUNT I AS MOOT*

*ORDER GRANTING DEFENDANT'S, CITY OF DEERFIELD BEACH'S, MOTION FOR SUMMARY JUDG-MENT ON COUNT II AND DENY-ING PLAINTIFF'S, JOSEPH LAN-GLOIS' MOTION FOR SUMMARY JUDGMENT ON COUNT II AS MOOT*

COOKE, District Judge.

**THIS CAUSE** came before the Court on the parties' cross motions for summary judgment [DE 52, 58]. The Court having examined the record and being otherwise advised of the premises, it is therefore,

**ORDERED** and **ADJUDGED** that Plaintiff's Motion for Summary Judgment as to Counts I, III & IV is **GRANTED** and Defendant's Motion for Summary Judgment as to Count I is **DENIED** as **MOOT**. It is also **ORDERED** that Defendant's Motion for Summary Judgment as to Count II is **GRANTED**, and Plaintiff's Motion as to Count II is **DENIED** as **MOOT**. This case is **CLOSED**. All pending motions are **DENIED** as **MOOT**.

## I. *Introduction*

Plaintiff, Mr. Joseph Langlois ("Langlois" or "Plaintiff") and Defendant, the City of Deerfield Beach (the "City" or "Fire Department") both seek summary judgment on Plaintiff's claims for Defendant's violation of the Federal Family and Medical Leave Act ("FMLA" or "Act") (Count I) and Defendant's violation of Plaintiff's First Amendment rights (Count II). Plaintiff also seeks summary judgment on his claims alleging that Defendant violated the Florida Public Records Act (Count III & IV).

## II. *Factual Background*

Plaintiff became a firefighter for the City in 1988 and consistently received good evaluations during his tenure with the fire department. *See* Mr. Langlois' Evaluation, Plaintiff's Exhibit 3, ("Pl. Ex. 3").[1] However, between October 22, 2001 and November 14, 2001, Gary Lother ("Chief Lother"), the Fire Chief, became aware of a developing situation between a Lt. Tom Ray ("Ray") and Langlois. On November 8, 2001, during a Union meeting, Langlois objected to the City's unfair application of its rules and made various allegations against Lt. Ray, including certain perceived threats. *Id.* at ¶ 11. *See* Declaration of Chief Lother, ¶ 5. A rift allegedly developed between Lt. Ray and Langlois when Lt. Ray reported Langlois for being late for duty on October 22, 2001. Lt. Ray actually informed Langlois' supervisor of Plaintiff's tardiness, and Langlois was docked two hours of his pay.

Langlois' November 8, 2001 statements were communicated to Chief Lother on November 13, 2001, through a memorandum from Lt. Ray referencing workplace harassment *Id.* at ¶ 6. In that memorandum, Lt. Ray complained that Langlois had made threats to harass him both verbally and in writing over the next ten years. Lt. Ray further expressed concern for his safety and his family's safety, and informed Chief Lother that he was concerned about the possibility of workplace sabotage. Lt. Ray was particularly con-

---

1. Mr. Langlois received a "distinguished" rating from the City, in his evaluations from 1996 to 2000. Pl. Ex. 3. In December, 2001, Plaintiff received a "Competent" evaluation from the City. *Id.*

cerned that Langlois' would tamper with his protective gear and vehicle. *See* Lt. Ray's November 13, 2001 Memorandum ("Ray Memo.").

On November 14, 2001, Chief Lother received another memorandum. This time the memorandum was from Lt. John Quitoni, who also expressed concern about certain statements Langlois made concerning both Lt. Ray and the administration. *See* Declaration of Chief Lother, ¶ 6. In Lt. Quitoni's opinion, the dispute between Langlois and the administration had escalated. He was particularly apprehensive about Langlois' future course of action toward Lt. Ray.[2] Chief Lother assessed the situation and determined that the dispute or misunderstanding between Lt. Ray and Langlois was undermining the efficiency of the Fire Department. *Id.* at ¶ 8. Chief Lother therefore thought it necessary to immediately act to defuse any potential danger that could evolve from the conflict. To that end, the Chief refused to release Lt. Ray's personnel files to Langlois upon Langlois' public records requests. In support of his refusal, the Chief explained that he was particularly concerned for the safety of Lt. Ray and Lt. Ray's family. *Id.*

Chief Lother ordered Langlois to subject to a reasonable suspicion drug test and a psychological fitness for duty examination based on the reports he received from Lts. Ray and Quitoni, and based on

Langlois' request for information about Lt. Ray. *See* Section 3.07 of the City's Personnel Rules and Regulations and the City's Drug Free Workplace Policy.[3] Langlois was also placed on administrative leave pending the outcome of the testing. *See* November 15, 2001 Memo; see also City's Documentation of Reasonable Suspicion for Drug Testing, Plaintiff's Exhibit 6, ("Pl. Ex. 6"). In addition to being placed on administrative leave, the City prohibited Langlois from entering the City fire department property, and was told to restrict his communications to Fire Department personnel such as Chief Lother or the Deputy Fire Chief, Anthony Stravino. *See* November 15, 2001 Memo.

Based on the results of the fitness for duty examination, Dr. David B. Rooney ("Dr. Rooney"), (the psychiatrist appointed by the City to evaluate Langlois' fitness for duty) found Langlois unfit to perform his duties. On January 7, 2002, Dr. Rooney issued a brief note, without any discussion, addressing Langlois' inability to return to work. *See* Dr. Rooney's letter dated January 7, 2002, Plaintiff's Exhibit 10 .("Pl. Ex. 10"). Shortly thereafter, Dr. Rooney issued another report in which he concluded that Langlois suffered from Narcissistic Personality Disorder.[4] *See* Pl. Ex. 9.

---

**2.** According to Lt. Quitoni, Langlois stated:

> Some guys around here think they are made of kevlar, and Tom (Ray) is one of them, but I'll show you he is not bullet proof. I'm going after the management as well and anyone else who wants to stand by Tom's side. Next year, you and I [referring to me, Lt. Quitoni] are on the same team and if you stand by Tom the treatment will be the same for you. I'm going to ask for something in the next two weeks that may bring the whole department down. Tom is the nervous type, if I push this hard enough who knows, his family may come home and find him hanging. I may have already gone

too far. This may end my career, but it's going to end his too. I don't care because I can't take this crap any more.

*See* Lt. Quitoni November 14, 2001 Memorandum ("Quitoni Memo"), pp 1–2.

**3.** The City maintains a Civil Service System with rules codified in the Personnel Rules and Regulations. *See* Marva Gordon ("Gordon"), Director of Human Resources, Affidavit, at ¶ 6.

**4.** Dr. Rooney also made mention that "Mr. Langlois' behavior [was] consistent with employee terrorism." *See* Pl. Ex. 9, at ¶ 22.

Based on Dr. Rooney's diagnosis, the City placed Langlois on an indefinite sick leave beginning January 8, 2002. *See* City's Letter to Mr. Langlois, dated January 8, 2002 (hereinafter "January 8, 2002 Letter"), Plaintiff's Exhibit 11 ("Pl. Ex. 11"). The City also placed Langlois on FMLA leave "for concurrency purposes only" effective January 9, 2002. *See* Plaintiff's First Request for Admission, ¶ 3.[5] And from January 8, 2002 through and including August 15, 2002, Langlois was paid during his sick leave from sick, vacation, comp and kelly time, which he had accumulated during his years of service with the City. *See* Gordon Declaration, ¶ 25.[6]

Notwithstanding Dr. Rooney's findings, Dr. S. Richard Sauber, Ph.D. ("Dr. Sauber"), a psychologist, and Langlois' health care provider, found Langlois fit to return to work based on a personal examination of Langlois in early 2002. *See* Dr. Sauber's Report, dated March 13, 2002, Plaintiff's Exhibit 15 ("Pl. Ex. 15"). Dr. Sauber professed that he "found no basis for even suggesting that Mr. Langlois was unfit." *Id.*, at pp. 11–12. Langlois consequently reported Dr. Sauber's findings to the City and requested re-instatement pursuant to 29 C.F.R. § 825.310.[7] *See* Plaintiff's First Request for Admission & ¶ 2, Supplemental Response.

The City determined that Dr. Sauber's opinion was irrelevant and had no bearing on the City's procedures for determining Langlois' fitness for duty. *See* Pl. Ex. 2. Instead, Langlois was directed to provide Dr. Sauber's report to Dr. Rooney, and submit to a second examination by Dr. Rooney. *Id.* Dr. Rooney's second examination provided the same diagnosis as the first; Langlois was still determined unfit for duty. *See* Correspondence from Dr. Rooney, dated May 15, 2002, Pl. Ex. 22.

Frustrated, Langlois obtained another opinion from Psychiatrist, Dr. David A. Gross ("Dr. Gross"). Dr. Gross reviewed both Dr. Rooney's findings and Dr. Sauber's findings and concluded that Langlois was able to perform his duties at the Fire Department. *See* Dr. Gross' Report, Exhibit 24 ("Pl. Ex. 24"), p. 9. But even after Dr. Gross concluded in his October 14, 2002 report that Langlois was fit for duty, the City still refused Langlois' request for re-instatement.[8] (Plaintiff's Third Request for Admission, ¶ 30.)

### III. *Legal Standard*

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record

---

5. It is undisputed that at no time between January 8, 2002 and August 15, 2002 did Langlois ever request that he be placed on unpaid leave.

6. As of August 16, 2002, the City claims that Langlois had utilized all of his accrued sick, vacation, comp and kelly time, but the City maintains that Langlois to this date remains an employee of the City. *Id.*

7. 29 C.F.R. § 825.310 outlines the circumstances under which an employer may require that an employee submit a medical certification stating that the employee is able or unable to return to work.

8. Langlois alleges that he has been on City imposed leave since November 15, 2001, over three (3) years. *See* Langlois Affidavit ("Lang. Aff."), ¶ 49.

taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen,* 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## IV. *Discussion*

### A. *Langlois Qualifies for FMLA Protection*

 Langlois is entitled to FMLA protection since he was placed on FMLA leave. FMLA allows an eligible employee[9] to have a total of 12 workweeks of leave during any 12–month period if, among other things, they suffer from a serious health condition[10] that inhibits them from performing the functions of their position. 29 U.S.C. § 2612(a)(1)(2005). In fact, Congress in enacting the FMLA, found that "there was inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." The FMLA " 'creates a private right of action on the part of an employee to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State Court of competent jurisdiction,' " if that employer interferes with, restrains, or denies the exercise of FMLA rights. *See Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721, 724–25, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

To state a claim for interference pursuant to the FMLA, Plaintiff is required to show that he was entitled to a substantive FMLA right, and that Defendant denied him that right. *See Strickland. v. Water Works & Sewer Board of the City of Birmingham,* 239 F.3d 1199, 1208 (11th Cir. 2001). In this case, Langlois claims that the City has denied him his right to reinstatement upon presentation of a certificate from his health care provider verifying that he is fit for duty. *See* 29 U.S.C. § 2614.

The City argues that it was justified in refusing to reinstate Langlois because there was no direct conclusion in Dr. Sauber's report that Langlois was fit for duty. *See* Correspondence from City, dated April, 16, 2002, Plaintiff's. Exhibit 16 ("Pl. Ex. 16"). Moreover, the City claimed that Dr. Sauber's opinion was not relevant to the procedures followed by the City in

---

9. "The term 'eligible employee' means an employee who has been employed (1) for at least 12 months by the employer with respect to whom leave is requested under § 2612 . . . (ii) for at least 250 hours of service with such employer during the previous 12–month period." *See* 29 U.S.C.A. § 2611(2)(A). The employer must also employ more than 50 employees within 75 miles of the job site. 29 U.S.C.A. § 2611(2)(B).

10. "Serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

determining whether or not Langlois was fit for duty. *See id.* The City insists that it is its internal policy that requires Langlois to obtain clearance from the City's physician before he is entitled to be reinstatement. *See id.*

■ The City's reliance on its internal policies fail, because, as a matter of law, an employer cannot develop internal policies that circumvent the rights guaranteed its employees under the FMLA. An employer simply cannot develop policies that have the effect of interfering with an employee's FMLA protections. *Strickland,* 239 F.3d at 1204–05. Interestingly, the City informed Langlois that he was being placed on FMLA leave, effective January 9, 2002, but now argues that Langlois is not entitled to FMLA rights because: (1) he never requested leave, (2) he claimed at all times that he was fit for duty, and therefore cannot claim he has a "serious health condition," and (3) he has been on sick leave (pursuant to Rule 3.07 of the Personnel Rules and Regulations), since January 8, 2002 (and the Act only provides for 12 workweeks of leave). Additionally, the City asserts that Langlois has had more than three years of sick leave, and was compensated (between November 15, 2001–January 8, 2002) while on administrative leave. *See* Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem. For Summ. Judg."), p. 13.

Notwithstanding the City's contentions, Langlois' FMLA rights were triggered when the City placed him on FMLA leave. *Strickland,* 239 F.3d at 1205. The Court in *Strickland* explained that an employer has two options when an employee's leave qualifies under the FMLA and under the employer's sick leave policy. "The employer may either require that the employee use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave

entitlement and his paid sick leave concurrently." *Id.* Pursuant to the reasoning in *Strickland,* it is irrelevant whether the employee requested FMLA protection or not. *Id.* According to *Strickland,*

> Neither Congress nor the Department of Labor could have intended...to allow employers to evade the FMLA by providing their employees with paid sick leave benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

*See id.* Further, the *Strickland* Court outlined that:

> The logical purpose underlying the substitution language in the FMLA and accompanying regulations is to protect employers who offer paid sick leave benefits to their employees from having to provide both the statutory 12 weeks of leave required by the FMLA and the paid leave benefit separately. If employers could not require a sick employee to use accrued paid sick leave and FMLA leave concurrently *when the employee's condition qualifies for both,* then the employee could choose to use his paid leave benefit and his 12 weeks of leave sequentially. That would unduly and unfairly burden employers.

*See id.* at 1205–06.

The *Strickland* Court held that "the district court erred in holding that an employee who has not exhausted his paid sick leave is not entitled to the protections of the FMLA." *Id.* at 1206. As such, it is irrelevant whether Langlois had requested FMLA time or not. Since the City placed him on both sick leave and FMLA leave, his rights under the FMLA were triggered. The City's arguments

that Langlois claimed to be fit for duty, and therefore did not have a "serious health condition," and that he was receiving compensation from his accrued time, thereby voiding any FMLA protection, consequently fail.[11]

### 1. Langlois is Entitled to Reinstatment

The City argues that even if Langlois' right to reinstatement was triggered by the City's January 8, 2002 letter (placing him on FMLA leave), Langlois cannot be reinstated. The City reasons that "an employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period." *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir.2000). In short, the City argues that once it can be shown that it refused to reinstate the employee for a reason wholly unrelated to the FMLA, it cannot be held liable for violating the Act. The City argues that 29 C.F.R. § 825.216(a), provides that:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period. *An*

*employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment....*

■ The City's argument, however, is misplaced. It is an employee who is *terminated* for reasons "wholly unrelated" to his need for FMLA leave who cannot maintain an interference claim under the FMLA. *See* 29 C.F.R. § 825.312(d). For example, if an employee's position is eliminated because of layoff or a reduction in force while the employee is on FMLA leave, the employee is not entitled to reinstatement under the Act. *See id.*[12] Here, Langlois has never been terminated from his position as a firefighter with the City. In fact, the City has made it clear that "effective August 16, 2002, after utilizing all of his accrued sick, vacation, comp and kelly time, R/S Langlois has not been paid by the City of Deerfield Beach, *but remains an employee.*" *See* Defendant, City of Deerfield Beach's Rule 7.5 Concise Statement of Material Facts in Support of Motion for Summary Judgment ("Def. Facts"), ¶ 19.

The City is unable to show that Langlois was terminated for reasons "wholly unrelated" to the employee's FMLA leave be-

---

**11.** In *Tate v. Farmland Ind., Inc.*, 268 F.3d 989, 997 (10th Cir.2001). The Court reasoned that:

> Defendant placed plaintiff on involuntary sick leave precisely because he has a health condition which requires a physician's continuing treatment. We doubt that many employees placed on involuntary leave for health reasons would consider themselves unable to perform their jobs. Common sense tells us that this view does not render such employees unable to assert their leave rights under the FMLA.

**12.** 29 C.F.R. § 825.312(d) states that:

> An employee has no greater right to reinstatement or to other benefits and condi-

tions of employment than if the employee had been continuously employed during the FMLA leave period. Thus, an employee's rights to continued leave, maintenance of health benefits and restoration, ceases under FMLA, if and when the employment relationship *terminates* (e.g., layoff), unless that relationship continues, for example, by the employee remaining on paid FMLA leave. If the employee is recalled or otherwise re-employed, an eligible employee is immediately entitled to further FMLA leave for an FMLA qualifying reason. An employer must be able to show, when an employee requests restoration, that the employee would not otherwise have been employed if leave had not been taken in order to deny restoration to employment.

cause Langlois has never been terminated. *See* January 8, 2002 Letter. Moreover, the City placed Langlois on sick leave for the same reason it placed him on FMLA leave. *Id.* Therefore, it is difficult for the City to show that Langlois is not being reinstated for reasons wholly unrelated to his FMLA leave. It stands to reasons that the same health reasons that precipitated his sick leave, also precipitated his FMLA leave.

Since Langlois was on FMLA leave, he is required to follow the procedures outlined by the Act before be can bè reinstated to his position. Pursuant to the Act, an employee is entitled to be reinstated to his or her former position upon return from FMLA leave. *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 86, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). An employer, however, may require that the employee provide certification from the employee's health care provider verifying that the employee is able to resume work. *See* 29 C.F.R. § 825.310.[13] Specifically,

> [a]s a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work.

*See id.*

### a. The City's reliance an § 3.07 of its Personnel Manual is Misplaced

Once an employee provides a fitness-for-duty certification, verifying that he is healthy enough to return to work, his employer cannot require additional information. In fact,

> an employer may seek fitness-for-duty certification only with regard to the particular health condition that caused the employee's need for FMLA leave. The certification itself need only be a simple statement of an employee's ability to return to work. A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be acquired, and clarification may bè requested only for the serious health condition for which FMLA leàve was taken, the employer *may not delay* the employee's return to work while contact with the health care provider is being made.

*See id.,* at (c). Significantly, the City's argument that Section 3.07 of the City's Personnel Rules and Regulations governs this situation fails. The City essentially asserts that pursuant to 26 U.S.C. § 2614(a)(4), a valid Florida State or local law supersedes the regulations surrounding the FMLA, and therefore, the City's Personnel Rules dictate the requirements surrounding Langlois' return from leave. Under 26 U.S.C. § 2614(a)(4),

> (a)s a condition to restoration...for an employee who has taken leave under section 2612(a)(1)(D)...the employer may have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work, *except that nothing in this paragraph shall supersede a valid State or local law....*

---

**13.** 29 C.F.R. § 825.310 specifically addresses the circumstances under which an employer may require an employee to submit a medical certification stating that the employee is able or unable to return to work.

As a result of the above Regulation, the City argues that it is justified in relying on § 3.07 of its Personnel Rules, which states that,

> all employees of the Civil Service System during their period of employment may be required to undergo periodic medical examinations to determine their physical and mental capacity to perform the work required of their position. Such exams shall be at the expense of the City and be performed by a doctor designated by the City. Employees who fail to pass periodic physical examinations due to deficiencies which interfere with their ability to perform their assigned duties shall be subject to review by the City and/or Civil Service Board. Refusal to be examined by the City authorized physician when so directed by a Department Head shall be cause for disciplinary action.

*See* City of Deerfield Beach Employee Handbook (hereinafter "Employee Handbook"), § 3.07.

The City's argument, however, ignores the obvious: the City's Employee Handbook or § 3.07 is not a State or local law. The City only makes the conclusory assertion that "section 3.07 of the City's Personnel Rules and Regulations constitutes a local law," in that it is an ordinance. *See* Def. Motion for Summ. Judg., at 14. A review of § 3.07 indicates that it is simply a part of the City's personnel manual, and is actually found in the City's Employee Handbook. There is no indication that § 3.07 is a local or State law.[14] As such, it bears repeating that "[n]either Congress nor the Department of Labor could have intended ... to allow employers to evade the FMLA by providing their employees with paid sick leave benefits." *See Strickland*, 239 F.3d at 1205.

### b. The City Must Accept Medical Certification from Mr. Langlois' Psychiatrist and Psychologist

Given that Langlois has received medical certification from his health care provider stating that he is fit for duty, the City must reinstate him. *See* 29 C.F.R. § 825.310. Both Dr. Sauber and Dr. Gross have rendered opinions stating that Langlois is fit to return to duty.[15] *See* Pl. Ex 14, p. 12; *see also* Pl. Ex. 15, p. 9. Consequently, the City has no reason for refusing to reinstate Langlois to his position. The City cannot cloak itself in the protection of its own sick leave policy in an attempt to circumvent liability under the FMLA. *Strickland*, 239 F.3d at 1205.

### B. Langlois Has Not Demonstrated that the City has Deprived Him of His First Amendment Rights

In addition to Langlois' allegations that the City violated his rights under the FMLA, Langlois also asserts that his First Amendment rights under the United States Constitution were violated. The City argues otherwise. Significantly, the City claims that Langlois has failed to state a cause of action upon which relief may be granted, because 42 U.S.C. § 1983 provides the *exclusive remedy* for constitutional violations committed by municipalities. This Court need not reach the issue

---

**14.** Even if § 3.07 was a State or local law, it could not diminish the rights afforded by the FMLA. The Act specifically states that "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides *greater* family or medical leave rights than the rights established under this Act or any amendment made by this Act."

*See* 29 U.S.C. § 2651. Therefore, the City may provide greater rights to its employees than the FMLA, but cannot diminish the rights guaranteed under the FMLA.

**15.** The FMLA identifies both a clinical psychologist and a doctor of medicine as "health care providers". *See* 29 C.F.R. § 825.118(a)(1) & (b)(1).

of the exclusivity of 42 U.S.C. § 1983 as the means of obtaining redress for constitutional violations against a municipality.[16] Even if Langlois is required to bring his First Amendment violation claim via 42 U.S.C. § 1983, he is still required to show that Defendant violated his right under the United States Constitution. Langlois cannot make this showing.[17]

■ To bring a cause of action under 42 U.S.C. § 1983, Plaintiff must show that Defendant was acting "under color of state law," and that there was a violation of a particular constitutional or federal statutory provision. *See United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir.2001). In this case, Plaintiff must show that Defendant violated his freedom of speech as protected under the First Amendment. Specifically, Plaintiff must show that the Defendant demoted or discharged him in retaliation for protected speech. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989).

■ Langlois is unable to show that Defendant retaliated against him because of his protected speech because he cannot show the first two elements of a First Amendment retaliation claim. "This Circuit has developed a four part test to determine whether an employee suffered such retaliation." First, "a court must determine 'whether the employee's speech

may be fairly characterized as constituting speech on a matter of public concern.'" *See id,* at 1565. If there is a finding that Plaintiff's speech is a matter of public concern, the Court must then "weigh the employee's First Amendment interest against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *See id.* If Plaintiff prevails on the balancing test, the Court must then determine whether his speech played a "substantial part" in Defendant's decision to demote or discharge the employee. *See id.* "Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, 'the state must prove by a preponderance of the evidence that it would have reached the same decision…even in the absence of the protected conduct.'" *See id.* at 1566.

### 1. *Langlois' Speech was Not of Public Concern*[18]

Langlois' speech was not of public concern. For an employee's speech to be of public concern, it must "relate to a matter of political, social, or other concern to the community."[19] *See Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993). In making this determination, the Court is required to "examine the content, form, and context of the employee's speech." *See Chesser v.*

16. The Court notes that "[42 U.S.C. § 1983] is a codification of § 1 of the Civil Rights Act of 1871, and the text of the statute purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *See Kalina v. Fletcher,* 522 U.S. 118, 123, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

17. The First Amendment states that "Congress shall make no law…abridging the freedom of speech…" *See* U.S. Const. Amend. I. This right was made applicable to the states by the Fourteenth Amendment. *See Everson v. Board of Educ.,* 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

18. The City does not dispute that Langlois' was subject of an adverse employment action. In fact, seven days after Langlois made his speech at a Union meeting, he was placed on administrative leave, and has not been allowed to perform his duties for approximately three years. *See* Langlois Affidavit, Plaintiff's Exhibit 5 ("Pl. Ex. 5.").

19. "The threshold question of whether such speech 'relates to matters of public concern is a question of law, and is therefore, readily susceptible to disposition on summary judgment.'" *See Pearson v. Macon–Bibb County Hospital Authority,* 952 F.2d 1274, 1278 (11th Cir.1992).

*Sparks,* 248 F.3d 1117, 1122 (11th Cir. 2001). Langlois claims that the City retaliated against him as a result of his speech at a November 8, 2001 union meeting (with approximately 30 union members present), which addressed violations of the rights of "rank and file firefighters." According to Langlois, at the meeting he spoke about "important union and public matters including violations by the Defendant of the Florida Public Records Act. § 119.01 et. seq., Florida Statutes," and sought to disclose the City's misconduct. *See* Amended Complaint, ¶ 46.

Regardless of Langlois' assertions, his comments at the November 8, 2001 union meeting stemmed from the unique circumstances surrounding his employment.[20] According to the Supreme Court in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), an employee's speech is not protected by the First Amendment if the "employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest....." *See Connick,* 461 U.S. at 147, 103 S.Ct. 1684. Based on the record in this case, it appears that Langlois' speech (especially at the Union meeting of November 8, 2001) was primarily geared at expressing his displeasure at his superiors for the disparity in treatment between himself and Lt. Ray. In fact, Langlois himself stated that "[o]n November 8, 2001, during a union meeting, I made my objections to the City's unfair application of its rules known to the union. In doing so, I stated that the City officials were not exempt from the rules that the City was applying in strict fashion against him [sic]. On November 15, 2001, just seven (7) days after I spoke out against the Fire Department officials at the union

meeting I was placed on administrative leave." *See* Langlois Affidavit ("Lang. Aff."), ¶¶ 11–12. Langlois' speech therefore arose from his perceived personal mistreatment as a fireman/employee.

In *Pearson v. Macon–Bibb County Hospital Authority,* 952 F.2d 1274 (11th Cir.1992), the Court ruled that "neither generalized health concerns nor 'a supposed popular interest in the way public institutions are run is sufficient to create a material issue as to whether [Plaintiff's] comments pertained to a matter of public concern within the meaning of *Connick.*' " *See Pearson,* 952 F.2d at 1279 (citing *Ferrara v. Mills,* 781 F.2d 1508, 1515 (11th Cir.1986)). The plaintiff in *Pearson* alleged that her employer's (the Medical Center of Central Georgia's) action against her were in retaliation for her comments that were critical of the overall operating room cleanliness and her supervisors's assignment of cleaning responsibilities.

The plaintiff argued "that her remarks should be accorded First Amendment protection, because they touched the O.R. conditions that were potentially hazardous to patients and addressed deficiencies in the functioning of a publicly funded facility— both matters of some public significance." *See id.* at 1278. The Court explained that

...*Pearson's* complaints primarily pertained to the assignment of cleaning responsibilities in the O.R. and the allocation of blame among nurses responsible for O.R. conditions on those occasions when cleaning duties were neglected. It was only incident to speaking on these concerns that appellant's remarks touched on conditions that might be potentially hazardous to patients. Appel-

---

**20.** Langlois claims that at the union meeting he informed union members that the City denied his public records request. Langlois also claims that the City retaliated against

him for defending other union members in grievance proceedings and other matters, and for complaining that the rules and regulations were not being applied fairly

lant's complaints, furthermore, were in large measure conveyed in light of remand, still fresh, which appellant believed unfairly attributed responsibility to her for poor O.R. conditions. In essence, [plaintiff's] comments concerned the circumstances of her own employment.

*See id.* at 1278–79.

Similarly, in *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir.1998), the Court emphasized that "[t]he fact that such information may be of general interest to the public, however, does not alone make it of 'public concern' for First Amendment purposes." *See id.* The plaintiff in *Morris* filed suit against defendants Sheriff of Polk County, Florida personnel, claiming that he was illegally fired for statements he made in an accident report and related deposition. The plaintiff alleged in his accident report that he observed an officer of the Sheriff's Department traveling more than 130 mph in a 50 mph zone, and that the officer failed to use an emergency blue warning light in violation of the Sheriff's Office policy. Additionally, in his deposition in connection with a lawsuit against the Sheriff's Department, Morris stated that there was a "great possibility" that the accident, in which a citizen was killed, would not have occurred if the officer was traveling at the legal speed limit. *See id.* Morris subsequently claimed that his accident report was protected under the First Amendment because he "reported on a co-employee's policy violation and negligence that jeopardized public safety and subjected his employer to substantial liability." *See id.* The Court held that Morris' dismissal did not violate his right to free speech as a public employee, as the issues about which he spoke were not considered matters of public concern.

In this case, Langlois' statements were clearly made pursuant to his status as an employee of the Fire Department, and ad-dressed, like the statements by the Plaintiff in *Pearson* and *Morris*, circumstances of his own employment. As such Langlois's speech is not protected under the First Amendment, and his constitutional claim must fail.

**2. Even if Langlois' Speech was of Public Concern, the City's Interest in Efficiency Outweigh's Langlois' Speech Interest**

■ Assuming arguendo, that Langlois' speech was of public concern, the City's interest in curtailing his speech outweighed Langlois' interests in speaking. "When a public employee speaks on a matter of public concern, a constitutional violation only occurs when the employee's interests in speaking outweigh the employer's interest in curtailing the speech in order to promote the efficiency of the public services it delivers." *See Carroll v. Neumann,* 204 F.Supp.2d. 1344, 1351 (S.D.Fla.2002). In *Carroll,* Plaintiff's speech was an attempt to blame the Palm Beach County Medical Examiner's Office and Palm Beach County Sherrif's Office for flaws and corruption. Notwithstanding the corruption allegation, the Court held that "[s]uch speech damages the reputation of these agencies and compromises respect for the chain of command and the efficiency of the operations within agencies." *See id.* at 1352.

■ Given that Chief Lother was informed that at the November 15, 2001 union meeting Langlois' "physical posturing" and "uncontrollable emotions" apparently directed at Lt. Ray, was cause for concern, and that Langlois informed those present that, he was going to take the next year off and bank $10,000 to use to get Lt. Ray, the Chief had legitimate reason to be concerned about the cohesiveness and efficiency of the Fire Department. *See* Quitoni Memo p. 1. Therefore, Chief Lother had an interest in the cohesiveness and

efficiency of the Fire Department that outweighed Langlois' right to speech. In short, Langlois is unable to establish that his speech is constitutionally protected, and the City is therefore entitled to summary judgment on Langlois' claim for violation of the First Amendment.

### C. The City Has Violated Fla. Stat. § 119.07

Pursuant to Fla. Stat. § 119.07, the City is required to allow certain public records to be inspected by members of the public. More specifically,

> Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records.

See Fla. Stat. § 119.07(1)(a). Mr. Langlois alleges that he submitted a public records request to the City seeking Lt. Ray's personnel records, and that the City summarily rejected Mr. Langlois' public records request. See Chief Lother's October 29, 2001 Memo titled "Request for Information." The Chief specifically stated,

> I have received your memo dated 10/26/01 requesting Lt. Tom Ray's personnel file. This request is unprecedented, without merit and denied. No further consideration will be given to this issue until I am provided with written substantiation validating your inquiry.

See id.

 Since the City actually admits that it did not comply with the strict requirements of the Florida public records law, without providing any legal justification for

its lack of compliance (including any argument as to whether the record is a "public record"), the Court must find that the City has violated Fla. Stat. § 119.07. See Defendant, City of Deerfield Beach's Response to Third Request for Admissions (hereinafter "Def. Res. Third Req."), ¶¶ 60–61. Although the City states that it refrained from providing Langlois with Lt. Ray's personnel information because it thought that Langlois was a threat to Lt. Ray, it has cited to no statute or case law suggesting that it was justified in that regard. Moreover, the Fla. Stat. § 119.07(1)(b) states that,

> [a] person who has custody of a public record who asserts that an exemption applies to a part of such record shall redact that portion of the record to which an exemption has been asserted and validly applies, and such person shall produce the remainder of such record for inspection and copying.

Therefore, if the City believed that Lt. Ray's personnel information was exempt from disclosure for a statutory reason this reason should have been disclosed. Specifically, Fla. Stat. § 119.07(1)(c) provides that,

> If the person who has custody of a public record contends that all or part of the record is exempt from inspection and copying, he or she shall state the basis of the exemption that he or she contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute.

Since the City has failed to identify the statutory basis for any exemption from § 119.07, or for the withholding of the requested information[21], this Court finds

---

21. The Court notes that the City did not respond or in any way address the issue of its alleged violation of § 119.07 in its Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgement or in

Defendant's Memorandum of Law in Support of Motion for Summary Judgment. Furthermore, the City admits that it violated the strict terms of § 119.07. See Def. Res. Third Req, ¶ 60–61.

that summary judgment for Langlois is appropriate on Counts III & IV.[22]

### CONCLUSION

For the foregoing reasons it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment on Count I, III and IV is **GRANTED,** and Defendant's Motion for Summary Judgment on Count I is **DENIED** as **MOOT.**

2. Defendant's Motion for Summary Judgment on Count II is **GRANTED,** and Plaintiff's Motion on Count II is **DENIED** as **MOOT.**

3. This case is **CLOSED.** All pending motions are **DENIED** as **MOOT.**

---

**22.** The Court recognizes that there are certain public records that are exempted, such as the home addresses, telephone numbers, social security numbers of active or former law enforcement personnel, and that there are also exemptions that apply to firefighters. *See* Fla. Stat. § 119.07(4)(i). The City, however, fails to explain how or why Lt. Ray's personnel file would be exempt under the circumstances of this case as required by Fla. Stat. 119.07(1)(e).